19-1142, et al., National Association of Regulatory Utility Commissioners, Petitioner v. Federal Energy Regulatory Commission, Ms. Murphy for Petitioner N.A.R.U.C., Mr. Lane for Petitioner American Public Power Association, et al., Mr. Viswanathan for the respondents. Good morning. Good morning. Good morning, Your Honors, and may it please the Court, Jennifer Murphy from the National Association of Regulatory Utility Commissioners. I would like to reserve three minutes for rebuttal. Your Honors, this case presents a narrow but critical issue for the Court. Congress granted authority to FERC over wholesale electric sales, but Congress also explicitly reserved powers to the states. These powers include jurisdiction over the distribution side of the electric grid. The rule at issue here disregards that division of authority. The storage rule did not have to be written this way to achieve its goals. And because it is unlawfully written, we ask the Court to vacate this aspect of the rule. My organization represents the state public utility commissions in every state that regulate utilities that provide essential services like electricity and natural gas. They are responsible for ensuring that their retail customers receive safe, reliable, and affordable service. And one small and unnecessary aspect of the rule, FERC exceeded its statutory authority granted by the Federal Act, Power Act, by attempting to curtail state authority over the distribution system and prevent states from executing their responsibilities fully. This prevents them from guaranteeing that their retail customers receive safe, reliable, and affordable service. Before turning to the statutory language of the Federal Power Act, it is important to clarify what this case is about and what it is not about. This case isn't about the validity of the majority of the storage rule. It's about the validity of a discrete portion of the rule in which FERC asserts that states may not, quote, broadly prohibit, unquote, local state regulated storage resources on the distribution system from participating in federally regulated wholesale markets. This case is also not about wholesale rates. Much of FERC's argument relies on cases addressing FERC's exclusive authority over wholesale rates. But this case is actually about FERC's attempt to encroach on states' ability to regulate distribution facilities and local storage resources. Also, this case is not about a request by states for FERC to disclaim its jurisdiction over wholesale transactions by local resources. What this case is about is what the Federal Power Act allows FERC to do and what FERC cannot do. FERC's authority is constrained by what power that is granted by the Federal Power Act. With its storage rule, FERC exceeded the limits of its authority under the Federal Power Act when it proclaimed that states cannot broadly prohibit storage resources on state regulated distribution systems from participating in the federal wholesale market. Can I... I'm sorry. Go ahead, Judge Rogers. No, please. Judge Wilson, proceed. You said that FERC exceeded its authority in the rule by saying that states may not broadly prohibit electric storage resources from participating in the wholesale market. But that language is in, I guess, an explanatory section of Rule 841... I'm sorry, of Order 841A. That language doesn't appear in the rule itself. It's not in 18 CFR 35.28 anywhere, is it? No, Your Honor. Then what is it that you're asking us to set aside? If the regulation that was amended by the order doesn't include the offending language, then where is your injury? What is it that we're supposed to be doing here? We are asking the court to vacate just those sentences where FERC declares that states cannot broadly prohibit local resources from participating in the wholesale market. That language is there. And FERC, we asked for clarification when it was in the Order 841. We asked for clarification of that language. FERC still included it in 841A. FERC is here defending that language now. If FERC had said that that language had no meaning, we wouldn't be here, frankly. So we are asking that the court remove this language from the order. I guess what I'm trying to get at is that normally we vacate an order because there is a rule or a specific mandate by regulation or in action, but there's a rightness challenge that's been raised, and even the amicus states that include California have said that while they don't like that language, the broadly prohibiting language, they don't believe that ultimately it's going to prevent them from taking steps to ensure the reliability and safety of their grid in circumstances where there's a wildfire or a potential blackout or something of that nature. In that if there is a potential conflict, they believe that they can work it out with FERC, and if they can't, then they'll be back here to see us or another court. Why isn't that the way that we should resolve this? Well, respectfully, Your Honor, if FERC is here defending the inclusion of this language in its order and saying that it has meaning, if the state were reading the order, it would be inhibited or it might seem to feel inhibited from pursuing its oversight and management of the distribution system by the language in the order itself. If the court finds that this language does not impact state jurisdiction, we would find that to be an acceptable result. All right. Well, I don't want to monopolize the questioning. Thank you for your responses. So following up on Judge Wilkins' question about where this language appears, how do you reconcile that with at least the position that the Commission took on rehearing and now before the court in its brief that tracks very much the notion Judge Wilkins was reviewing with you that the state of California has articulated? In other words, are we looking for a problem to happen as distinct from a clear violation of a jurisdictional bar or, as you say, a clear line? Yes, Your Honor. The FERC has said that states cannot do this action. And so currently they are... Cannot do what action? They cannot create broad prohibitions against all local storage resources participating in federal wholesale markets as they can with demand response resources currently. We were looking for the same what's been referred to as opt-out language that FERC included in Order 719 and 719A that preserves this jurisdictional boundary and we asked FERC for that language in the rulemaking. Instead of providing that language, FERC has gone the other way and directly prohibited states from taking this sort of action. So I understand what you're saying, but it seems that... FERC could have remained silent on this issue, but they chose not to. Instead of leaving it open for states to try to implement regulations regarding local storage resources participating in the wholesale markets, they preemptively said you cannot do this. And so... And they're saying that even if we did it, we'd be preempted, but if they're saying that... Thank you, Your Honor. Wait, wait, don't go away. Judge Garland, I have a question. Yes. If I read the... I want to see exactly how you read the bar on states and compare it to the way in which the agency... So we agree with the following, that the FERC rule says that states can't bar a DSR from getting on a local grid at all, but if a DSR is allowed on the grid, then the state can't bar it from providing power to interstate wholesale markets. Is that what the rule does, or does the rule do something else? I'm sorry, Your Honor. Could you just repeat the last part of the question? Yeah, well, I'll read it again. A state cannot bar a DSR from getting on... can bar a DSR from getting on the grid at all for safety reasons, for reliability reasons, for whatever reasons. But if the state allows the DSR to get on the grid, it can't bar it from providing power to interstate wholesale markets, assuming it can do it safety and reliability. It can impose the same safety and reliability rules it can apply to anything, but it can't, to use the word in a colloquial way, discriminate to prevent the DSR from providing power to an interstate wholesale market. Correct. Yes, FERC is saying that it is the local storage resources' choice whether they participate in the retail market or the wholesale market. Right, but the state can still bar the DSR from getting on the local grid at all. Yes, under a variety of... I'm saying in terms of understanding of what FERC is doing, when they say we don't give DSRs a right of attachment, regardless of what the state wants, what they mean by that is the state can bar the DSR from getting on the local grid at all. That is, they can just block it from getting on the grid. But once it allows it to be on the grid, then it can't discriminate against the provision of interstate wholesale power. I'm not asking this to be argumentative. I just want to be sure I understand that both sides understand the rule to be the same. Yes, yes, Your Honor. They're saying that we cannot prohibit them from accessing the wholesale markets. Okay, let me ask one other question. Is there any state that has said that they want to or they're thinking about or they might any time in the near future want to bar a DSR from providing power to interstate wholesale markets? Well, as we noted in our brief, our initial brief at 32.74, the state of North Carolina, in a similar situation with demand response resources, found that because they are a traditionally vertically integrated state, that retail customers individually or collectively through a third-party aggregator that is not overseen by the Commission cannot participate in the wholesale markets. So that state... That had to do with demand response, but with respect to... I understand you think there's an analogy, but has any state, including North Carolina, indicated that it wants to do this with respect to DSRs? No, directly. The states have said that they want to preserve this authority, though. They want to make sure that this is a new situation for them. They are... Before FERC enacted this rule, this was not a possibility. In what way have they indicated that they want to preserve the possibility? And what particular state has said that? Well, so I work for the National Association of Regulatory Utility Commissioners. We represent all the states. We asked our members what comments they wanted to put into the rulemaking, when it was a rulemaking, and then whether they supported our action. And we had them participate in a comment process and in the appellate process, you know, with their oversight and reviewing our proceedings and pleadings. So they've done this through our process. I guess we're asking for a little specificity. For example, it's a new situation, you say, and the question is, what have they lost? What do they want to do that they think the rule, as revised, would bar them from doing? So the rule is prohibiting them from... Broadly... I'm sorry. I pardon you, Your Honor. I didn't hear that last part. No, excuse me. Please continue. Oh. So part of this rule is that states will have to take on additional burdens, such as accounting measures and looking at their operations and such. And the accounting measures will have to deal with how to separate retail and wholesale practices and metering and such. And so this is a new burden. And so as states go through this process, they want to make sure that they can still meet their obligations, which include the design, operations, reliability, and cost of the systems for the distribution systems. So this is a tool for them to be able to move through this process. Just to follow up one more time, what you and I established together is that the only thing that the state can't do is once DSR is on the grid and approved to be on the grid, states can't bar it from providing power to interstate wholesale markets. Has some state indicated that it wants to discriminate against the provision of power to interstate wholesale markets? As Burke pointed out, Missouri filed comments, and it was in the demand response aggregation docket, but it's a similar, which would include storage resources. But they said that they don't think that they're going to use the opt-out, but they want to preserve the ability to use the opt-out. And that is generally the consensus among our members, is that they want to be able to move forward in a methodical, piecemeal fashion and figure out as they go what they need to do, and this takes away one of the tools in their toolbox. Thank you. Thank you. It seems that what you're asking us to do is to strike down this language in this order now, which seems to be... Is it because we're supposed to interpret this language as a mandate to the states and we should strike it down now as opposed to waiting until if and when the state decides to take action and FERC interprets that action as conflicting with this mandate or conflicting with this order in the regs that the order has amended, instead of waiting for that conflict to occur? Yes. I mean, that would be one way to approach it, but we also feel that the Federal Power Act does not support FERC's interpretation of its jurisdiction in order to be able to do this. FERC states that its rule is directed at wholesale market operators and that it is trying to reduce the barriers to participation in the wholesale market. Our position is that the Federal Power Act allows it to do that for barriers within the federal wholesale markets to participation. This is what they're calling a barrier outside and we think it exceeds FERC's jurisdiction to proclaim in advance that states cannot do this. We don't think that the Federal Power Act supports that. Can I just follow up on that? Just again, you think that FERC does not have the authority to bar a state from barring a power source that is already on a local grid from providing power to an interstate market. Is that right? Yes. So prior to the rule, this was not an issue because the local storage resources were on the local distribution system and could not participate in the federal market. I don't care. I'm sorry. I understand that this is new. Are there regular power plants, fossil fuel plants, et cetera, that are on local grids to begin with? That is the way they plug into the interstate, providing interstate wholesale power is through a local grid? No. Most of those plants are on the transmission system, Your Honor. Are there any? When you say most, are there any? I would think that there may be a few, particularly in the smaller... And if FERC wants to ensure that those plants can reach the interstate grid and provide wholesale power, you think that is a violation of their jurisdiction, that's outside their jurisdiction? Is that what you're saying? Okay. I am saying that to do so, they need to use the distribution facilities, and those distribution facilities that are used for that are ones that have been established for this dual purpose. The distribution facilities we are referring to are not. These are distribution facilities that only deal with distribution activities. But it can be used physically to transmit power from these DSRs or in my hypothetical a power plant to the transmission grid, right? Depending on the load or the... Yeah, of course. I understand. Liability, security, et cetera. But we have a whole bunch of amicus states who want this to go forward, so it must be possible to do so, right? Yes. We are not saying... Yes, I recognize that many of the states are eager and are willing to have their resources participate in the wholesale market, and we fully support that. We are just saying that not all states are there, not all states are ready for this, and that those states that aren't are going to... And those states that don't have the capabilities to handle the accounting and the metering and all the extras that come with implementing this rule, those states need this tool to preserve their... Excuse me. So that sounds like an arbitrary and capricious argument, not a jurisdiction argument. I'm trying to only ask you about jurisdiction. All the problems you're mentioning, those are a question of whether the rule is arbitrary. The question I'm asking is whether there's jurisdiction. So isn't this a rule that affects wholesale rates? Just in the same way demand response was a rule that affected wholesale rates, even though it applied, even though it required crossing the local grid? This rule only affects wholesale rates if those resources are participating in the federal market. The issue here is what happens before that. Right now there are no wholesale transactions because they were not... Right. If there were wholesale transactions, it would affect the rate, right? I'm sorry. If there were... The phone is a difficult way to have the conversation for both of us. If there were such a transaction, it would affect the wholesale rate, right? It would provide power, and that would be more supply, and that would affect the rate, right? And the courts have found that... I'm not worried about courts here at all. I'm only asking the economics for a moment. But that would only be an incidental effect on the rate. So right now if the states could bar all the local storage resources from participating in the federal market, that's an incidental effect on the wholesale rate. It's a volume issue. It's not having an impact on what the rate is in the same way that other direct states... In the way you're describing it, demand response was an incidental effect also, right? It was reducing the load. Yes. Okay. And the court said that was okay. So the word you're using, incidental, which I'm taking it for purposes of the argument, but the court said it was a direct effect, that that was sufficient to constitute a direct effect, the Supreme Court. So you're referring to the ESSA case, Your Honor? Yes. So the opt-out was not at issue in the ESSA case, Your Honor. I understand, but I'm not asking that question yet. I understand why you want the opt-out. I'm only asking whether regulation of permitting these DSRs to reach the wholesale market would directly affect the rate. And permitting the demand response, according to the Supreme Court, directly affected the rate. I respectfully disagree. So the issue in the ESSA case was the actual setting of the rate. The opt-out happened beforehand, and the courts have said that it is only an incidental effect if you're changing the amount of who's participating in the federal market. But ESSA applied the rate to demand response, which was behind the meter. Yes, these are resources behind the meter, Your Honor. And so was demand response. Yes. Okay, I'm sorry, I've overdone my time. Thank you. Thank you. I am out of time, so if there are no other questions, I thank Your Honors. Thank you, we'll hear from you. I have one other question. Oh, sorry. Counsel, you said that in Order 841, the broad prohibition on states from the language broadly prohibiting states from banning electric storage resources from participating in the wholesale market, that that language appears in 841. Where does it appear in Order 841? I'm sorry, Your Honor, I misspoke. I have a citation for 841A. I don't know if I have the citation for 841. I'm happy to provide the 841A citation. Yes, it's in paragraphs 41 and 56 of 841A. I didn't see that language in 841. That's what I wanted to clarify. I'm sorry, I might have misspoken. So the language that you are objecting to is in 841A, but the rule that implemented the change in FERC policy, so to speak, was promulgated as part of Order 841. And Rule 841A didn't change the language of the regulation, right? I'm sorry, Your Honor, you're talking about the actual language of the regulation? So at the end of Order 841, FERC sets out what it proposes to be or what the amendments to the regulation, 18 CFR 35.28, will be, right? Yes. And so that implements this new policy, correct? Yes. And Order 841A didn't change that language to the regulation 35.28. Correct. It might have made other changes, but not with regard to this. Okay. So if the regulation is what is, I guess, governing the action by the states, then how are you harmed by that regulation? We are harmed... We are harmed because the order accompanying the regulation after we were trying... We are harmed because FERC, in its interpretation or its explanation of those regulations, states that we cannot take the action that we wish to be able to take. And we feel that that's beyond FERC's authority to ban us from doing that. All right. Thank you. Thank you. Thank you. All right. We'll hear from Council for Petitioners, American Public Power Association at Al. Mr. Lane? Thank you, Judge Rogers. I've asked for two minutes on rebuttal. I just want to go back. Maybe I should just go right to Judge Wilkins' question first. Yes, it wasn't... You're right, Judge Wilkins. It wasn't in 841, but more important from our standpoint, and remember, so I represent HEPA, which is all the community-owned utilities, NRECA, which is all the electric co-op utilities, and EEI, which is all the investor-owned utilities in the United States, and then AMP, which represents a number of utilities, primarily on the East Coast and Midwest. So when we didn't see the opt-out, which we had asked for in 841, we raised the issue. And if you look at J.A. 510, you can see that we asked that nothing in order, and if you don't mind, I'll just read the sentence. It's in paragraph 13. Nothing in order 841 overrides state law or tariff requirements that might prohibit or limit an electric storage resource interconnected with the distribution system or behind the retail meter from directly assessing the wholesale market. So we were concerned without an opt-out that we wanted it clear that it wasn't that the state still had that authority to broadly prohibit, not necessarily that we thought, and in fact we know, that not all states are going to use it and more important from our standpoint, not that we're not sure, we don't know that we will even ask for it. We're the utilities that are going to have to change their distribution systems to allow for this energy storage to get to the interconnect. Judge Garland, you kept referring to local grid, and I don't know exactly how you defined it, but all of these energy storage facilities that we're discussing are on what we call the distribution facilities. They're behind the meter or they're on the distribution facility. So you have to go through the distribution facilities to get to the point where the distribution system interconnects with what we call, at least what I would normally call the grid, which is really the wholesale market, the interstate grid. So it is in this situation. You brought up, Judge Garland, the question, aren't a lot of generators on the grid already? Yes, they are on the grid. You probably remember a lot of cases back a few years ago with the large generator interconnection agreements where we argued whether those adjustments were going to be rolled in or directly assigned to the generator itself. Well, think of that in a smaller scale. Let's say you have an array of solar panel on your roof in your house. You're not connected to the grid. I'm sorry, what I call the grid. You are connected to the distribution system, and our concern as distribution utilities is what adjustments are we going to have to make to allow you to put that, if you wanted to sell your solar power generator, what adjustments are we going to have to make to the distribution system to allow you to do that? And that's where the problems arise in our standpoint. You don't have an opt-out, and I agree with you, that's a question, an arbitrary and capricious question. I'm happy to address that. But I want to address more our first sort of the legal issue. When you see that it's only the distribution, what we call the distribution facilities, and that's the language in 201B1 that is assigned exclusively to states. And what we are saying is the commission exceeded its authority by banning not only state commissions, but also the APPA, the city councils are the ones who govern it, and the boards of a lot of the electric co-ops are the ones that govern their systems. And so what the commission is saying is none of those, and there are literally hundreds if you add those all up, none of those people in the future can broadly prohibit someone, a solar and energy storage resource on their distribution system from getting to the wholesale market. Let me interrupt for a second. Again, this sounds mostly like an arbitrary and capricious argument. You did make one reference which sounded jurisdictional, which is that FERC doesn't have jurisdiction over these facilities. But that's not what the statute says. What the statute says is shall not have jurisdiction except as specifically provided in this subchapter. Let me just suggest what I understand from the Supreme Court's opinion is 824EA, which is any rule or practice affecting such rate. So that's why, that's the way in which they get jurisdiction over to require nondiscriminatory transmission over the local distribution in order to get to the interconnection, in order to get to the transmission lines. Yes, Judge Garland, but there's also a number of Supreme Court cases. And if you just focus on EPSA, I agree with Ms. Murphy, the problem is EPSA had an opt-out. So the court never had to address this question. But if you look, we started out with Connecticut Light and Power in our brief and where Justice Jackson said, yes, this could be a federal system, but for whatever reason, Congress put that language in to what I'll call 201B. I'm sorry, Judge Garland, that's how I think of the statute is. That's all right. That's the difference between a lawyer who does a lot of FERC work and an appellate judge who looks only at FERC. You do a lot of FERC work, Judge. All three of you do. But what he's saying, what he said is for whatever reason, they put that language in and it has to mean something. And another case that we cited, Northwest Central, the court said, you know, just because you affect the wholesale rate, I mean, if that is all that happens, then you are eviscerating 201B1's limitation on FERC's jurisdiction. If the state is going to have, what the court is saying, almost anything that the state does is going to affect wholesale rates. So if that's true, then there's no, I think what they said is 201B1 would be meaningless. He said it has to directly affect, and the court endorsed that in EPSA. And the question is whether the court's description of the way in which demand response directly affected is any different than the way in which preventing discriminatory bans directly affects. And I would say, yes, it is. It's very different in the critical point, which is that demand response, you do not have to use any distribution facilities to affect the market. Remember, demand response is just getting a bunch of people to lower the energy that they're taking at, say, a peak period. So you don't have to use the distribution facilities. With energy storage distribution, what we call distributed storage, that's on the distribution facilities or behind the meter, you have to use, they have to use the distribution facilities. So the question then becomes who gets to control how the distribution facilities are used. Is it the state or the FDRC? And the cases come down very distinctly. I think, Judge Rogers, you said that there's a clear line of where they wanted to, I think in one of the earlier cases, Panhandle, that we cited, it says they took meticulous care to set up clear boundaries, and that boundary is that the states have jurisdiction over distribution facilities, and that's what we're talking about. Counsel, I think that if your argument were correct, then the opt-out wouldn't fix the problem because your argument is essentially then that FERC can't mandate the use of these, you know, behind the meter or other storage facilities. They just don't have the power to do that. It doesn't matter if they give the states the ability to opt out of the mandate. Your argument is that they don't have the power to do it in the first place. If something is ultra-virus, you don't fix it by saying, well, we know FERC doesn't have the power to do this, but we're going to let them do it unless and until a state objects. If they don't have the power to do it, they don't have the power to do it. So I don't see how an opt-out fixes your ultra-virus argument. Well, I think, Judge Wilkins, I don't want to sound superstitious, but we're pretty practical people, and if they did an opt-out, we wouldn't be raising this issue. But more important, and to your point, if you read EFSA, and I'm going to, again, I'm sorry, I'm going to read a line from EFSA. Although claiming the ability to negate such state decisions, the commission chose not to do so in recognition of the linkage between So in my view, what the court was saying in EFSA was, hey, they put this, they already have this opt-out policy, and they used it here. And they claim that they have the ability to do that, but we're not addressing that question. We're asking you now to address that question. And secondarily, what we're saying is, okay, if you think they have that power, we think, you know, as all of you are saying, it was arbitrary and capricious not to allow an opt-out here. So, yeah, I agree with you. The next section of EFSA, the court basically obliterated the argument by the petitioners, or I guess it was the respondents in that case because they had won in the D.C. Circuit, that, you know, the logical conclusion of EFSA's argument would be that, you know, demand response wasn't permitted at all. Yeah, but remember, in that... And that's essentially what you're, the logical conclusion of the argument that you're making here, isn't it? That this isn't allowed at all. Yes, but that's true. And, yes, but that's, I think that's a question that hasn't been, that was not decided by EFSA. And you... It's also a position that nobody comes in the comments, right? Did anybody in any of the comments say that FERC doesn't have the authority to allow or mandate electric storage resources to participate in the wholesale market? Did anybody take that position? Yes, we took that position, Judge Wilkins. If you look at 510, at the Commission's, JA 510, at the Commission's summary of our position on rehearing, I think you will see that we took that position, and that's why the Commission made a stronger statement about we're not going to allow states to broadly prohibit in 841A while they hadn't done it in 841. What I see, okay, well, we can perhaps agree to disagree, but I don't see JA 510 as saying that that's what you said. Can you point to the page in the JA where your rehearing petition says that? No, I, Judge Wilkins, I know that the excerpts, I'm sorry, the excerpts of our rehearing petition in the JA do not include that part, but I would be happy to supply that in a letter to the Court. All right, thank you. If there are no, I know I'm way over my time, so if there are no other questions, I'll hopefully get maybe a chance for rebuttal. Thank you. All right. Why don't we hear from Council for first? Good morning, Your Honors. Anand Vitsanathan on behalf of the Commission. There are a number of questions the panel had on the Commission's statutory jurisdictions. Before I get to that, there's one record point I just want to clarify from, I think a question from Judge Garland. Judge Garland, you asked the question about whether there are regular or traditional power plants connecting through the distribution system. The Commission did make a finding on this point. This is at JA 234, the top of the page, which is paragraph 31, and the Commission pointed out that, quote, various types of traditional generation demand-side resources that are not connected directly to the transmission system currently participate in the and the reference there is to the FERC jurisdictional wholesale markets. So the Commission also found, with respect to storage specifically, that there are many storage resources connected at the distribution level already participating in the wholesale markets before the rule. So let me now turn to some of these questions on jurisdiction. It was Judge Garland. That was helpful. Well, could you help me with one more thing, which is more fundamental, which is my understanding of what FERC did here. And I put it to the petitioner who agreed with this sort of description, bottom-line description. I want to see whether that's the same description you have. The state can bar a DSR from getting on the local grid at all for security, reliability, safety reasons. But if the DSR is allowed on the – I'll leave out the word grid. I'm sorry. That was a bad shorthand. Local distribution lines. But if DSR is allowed on the local distribution, state can't bar it from providing power to interstate wholesale markets. Is that the nut of it? That's correct, Judge Garland. I just need to add a bit more to that. First, the rule defines an eligible storage resource in part as a storage resource that has the contractual permissions to be able to inject energy to the grid, which means the appropriate permissions in place to be able to connect to a distribution facility if that's how they access it. That's what I understood the bottom line of. But if a DSR is already allowed on, and I understand that's where you get that from, from the language where you talk about contractual rights. Is that right? That's exactly right. And what the commission clarified throughout the rule is that whatever authority states had and retail regulators had before the rule to police matters like reliability and safety of the distribution system, none of those authorities are changed as a result of the rule. The broad prohibition that we've been speaking about this morning is the commission's interpretation of statutory authority over exclusive authority over the wholesale markets as meaning that states cannot extend their state authority over matters like reliability and start blocking wholesale sales and interstate commerce. To the extent that a state or retail regulator decided to do that in the future regulation would be preempted. Of course the commission's not, whatever powers a state or retail regulator had to issue regulations or enact laws, the rule is not changing any of those processes. It's just a matter of the commission pointing out that this is the bounds of our interpretation of the federal power act to the extent a state in the future decides to regulate in a way that's intruding upon our exclusive authority over the wholesale markets, that's the sort of thing that courts have preempted consistently. So Judge Garland, you also asked a question about the rule and effects on wholesale rates. Two responses on that point, Judge Garland. First, both sets of petitioners have not disputed the commission finding that electric storage resources participating in the wholesale markets has a direct effect on wholesale rates. For example, they did not dispute the commission's finding in the rule that existing market rules were unjust and unreasonable by imposing barriers to entry to electric storage resources. They did not dispute the notion that storage resources participating in the wholesale market would have effects on wholesale rates, including benefiting the wholesale market. I know that counsel for the states made a reference to incidental effects. That phrase typically applies in the context of preemption of state laws. We're not aware of any authority for the notion that there's some sort of threshold on how much of an effect on wholesale rates is needed for the commission's quote-unquote affecting jurisdiction to attach. And as you point out, Judge Garland, in the Electric Power Supply Association, the practice there was found to be within the commission's authority because it had a direct effect on wholesale rates. That's the same point that the commission's made here in terms of participation of storage resources at wholesale. In terms of, I think, Judge Wilkins, you asked a few questions about the scope of what petitioners were actually challenging. I just want to clarify here, unlike the, I guess, the respondent in Electric Power Supply Association, the petitioners here have not raised a traditional ultra virus argument. They did not argue, and actually no one at the commission level made the argument that the commission simply does not have authority to regulate electric storage resources. What they've argued is that to the extent that even if the commission has authority over this practice, states still have to consent to it. The problem with that, and I think we pointed out this at more brief is that because of the limited nature of their challenge, either the commission has power over the practice or it does not. And so if the commission is actually exercising its authority under the statute, and if it is not regulating local distribution facilities in violation of 824B1, then it's an appropriate exercise of the commission's statutory authority. And that exercise of authority is not contingent on states approving that authority. There's no suggestion in the statute or any case that the commission's federal power act authority hinges on states approving it. Now, obviously to the extent that the commission does not have authority over a particular practice that it chooses to regulate under the statute, then the fact that a particular state consents to that does not cure the statutory overreach. Again, we either have power over the practice or we do not. And again, I just want to emphasize in the rule that the commission is making clear that whatever states could do to protect reliability and safety and so forth with respect to distribution systems, that power is completely unchanged by the rule. And so to the extent that a state in the future passes some sort of regulation or law to protect the reliability of the distribution system, so long as that regulation is within the scope of state power, for example, over reliability, the fact that it has effects on the wholesale sphere is not relevant. And to the extent that anyone, whether it's a private party or the commission has a problem with what the state regulation in the future does and decides to challenge it as preempted by the federal power act, then that's just going to be a dispute that would come before an article three court like this one. And then, I mean, like every other preemption case that we're aware of, the court would actually be able to compare an existing state law or regulation and whether or not that law or regulation either intrudes upon the field, granted to the commission by Congress, or improperly conflicts in a way that blocks implementation of the purposes and goals set forth by Congress. So to the argument council, that the rule as clarified on rehearing actually deprived the state of authority to decide whether distributed storage may participate in wholesale market. In your view, that's a non-starter here because of the 824 authority and that the council, Mr. Lane's reference to what was it? 824 B1. No, his reference to, what was it? I'm just looking, I thought I wrote it down. It turns out that 201 B, where he referenced the Supreme court decision saying that that text has to be given meaning. So to the extent that distribution facilities are an issue, that's what it takes to decide. And that is a limitation on first jurisdiction. Well, certainly the federal power act in 824 B1, which is the same thing as 201 B of the statute. Certainly that imposes a restriction on the commission's jurisdiction over facilities used in local distribution. Number one, there's a caveat to that denial of jurisdiction. There's a phrase except as specifically provided. So if the commission has an affirmative grant of jurisdiction elsewhere, then that affirmative grant of jurisdiction would Trump number one, number two, what that provision is blocking the commission from asserting authority over is facilities used in local distribution. The rule itself does not impose any obligations whatsoever on any type of facility, local distribution or otherwise. Now, to the extent that there, there is some effect at the distribution level. I mean, that ship has sailed long before this rule, your honors. Number one, this court and the Supreme court have approved the commission asserting authority over entities physically located at the distribution level. And number two, this court's also approved on several instances, the commission asserting authority over wholesale sales and interstate commerce, even when they occur over facilities, over which the commission lacks jurisdiction. Right. So, so the, if the argument then from first position that whatever argument is being made today in terms of the burden that now is on the state distribution facility, that's not a jurisdictional argument. That's maybe an arbitrary and capricious argument. I mean, it's, it's, I think it's, they've raised it in both respects. I think the way they raised the jurisdictional point is this is what they repeatedly referred to as the house versus weather distinction. They've come up with in their briefs, which is that in their view, states have authority to decide whether a, an entity at the distribution level can participate in the first place in the wholesale markets. I mean, part of the problem there is that the language that takes away first jurisdiction over facilities used in local distribution can't be read to go as far as giving states exclusive and paramount dominion over anything that happens at the distribution level. That's why in the face of a lot of case law that gives FERC authority over wholesale transactions, wherever they occur. And it gives, that also approves first authority over entities connected at the distribution level. Even if as long as they're as long as what FERC is regulating is pursuant to its charge of regulating wholesale sales in interstate commerce. So that's, that's both electric power supply which was a practice affecting wholesale rate by a resource at the, at the distribution level. It's also this court's national association decision, which is about interconnections of generators to distribution facilities. And the rule here is quite careful that what it's exercising authority over is just the wholesale sales in interstate commerce. There's one actually key clarification of the bounds of the commission's authority in the rule where the commission points out, I think this is at JA 233. The commission points out that when a storage resource is injecting power to the grid for the purpose of participating in a FERC jurisdictional wholesale market, that's when the commission's jurisdiction attaches. But in a footnote on that page, it clarified that it was not necessarily extending jurisdiction every time a resource injected power to the grid. It needs to be for the purpose of transacting in a FERC jurisdictional wholesale market. Can I interject? Yes. Go ahead. So there was a concern raised, even by the amicus supporting you that the broadly prohibiting language was improvident and too broad. How are we supposed to interpret that language and why isn't it arbitrary and that language implies that a state couldn't take some action that could be reasonable to ensure the safety and reliability of its grid and local distribution system? Well, the way to interpret that language, I think, is in the context of what the commission was responding to, which is the notion that states can prohibit a resource at the distribution level for making wholesale sales and interstate commerce. And so that's the only, if you want to call it a restriction in the rule that the commission was articulating, it was trying to make clear through a number of examples in the rule that states have all the authority that they had to before the rule. In terms of whether the issue of reasoned decision-making and whether or not it was arbitrary and capricious, I think the commission extensively addressed all the various ways in which state and retail regulators authorities preserved and the way in which to the extent there are impacts on utilities that operate the distribution system, those utilities, for example, continue to have the authority to allocate any costs that they incur in the future as a result of the rule. And so there's very, so, I mean, I guess one way to think about this, Serge Wilkins, is that there has been some conflation in this case of the wholesale markets and the distribution system. First authority over the wholesale markets is exclusive and paramount. And that's the authority it is exercising in the rule. It's not trying to say anything with respect to the distribution system. So whatever processes an entity, whether it's a storage resource or any other type of entity connecting with the distribution level had to follow to get permission to inject power at a local level, none of those rules change as a result of the rule here. I would stretch Garland, but it is requiring the local distribution facility to permit the transmission to the wholesale market, isn't it? It is doing something to the local facility. It's not imposing requirements on anyone other than wholesale market operators. Now the commission's clarifying that the point of the rule is that wherever a storage resource is located, whether it's on the transmission system or on the distribution system, it's the resource's choice whether or not to participate in the wholesale markets. So to the extent a retail regulator or state regulator decides to prohibit an entity from making wholesale sales in interstate commerce, that would be an intrusion on the commission's statutory authorities. But the rule itself does not impose any obligations on anyone other than wholesale market operators. And we know from a number of Supreme Court cases, including electric power supply, that so long as the commission's acting within the scope of its authority as given to it by Congress, and so long as it's not regulating facilities used for local distribution, the effects on the retail sphere or on local distribution facilities do nothing to extinguish the commission's statutory jurisdiction. Can you help me for one second with sort of a physical explanation of what's happening here? When they inject into the local distribution facility, who runs the local distribution facility? Typically, I think they're owned by utilities that operate that infrastructure. Sometimes they might be owned by a state or retail regulator, or at least in part. Does that facility have to do anything or refrain from doing anything to permit the power to cross local facility to get to the transmission line, to get to the interstate transmission line? You mean in a physical or technical sense? Yes. I don't think so. I mean, there are, my understanding is at the distribution level, there are many utilities that have a variety of power plants or other resources connected to that system, and those entities are able to transmit power to the wholesale markets. So there is some sort of physical connection that's there between what we call the distribution system and interstate transmission lines. I mean, the rule is not requiring anyone to build any new physical infrastructure or anything like that to the extent that a utility has existing infrastructure that connects it to the interstate transmission system, and to the extent they feel that that infrastructure is being overloaded. For example, by all these resources at the distribution level, and now trying to make wholesale sales in interstate commerce, they can do whatever they need to do to deal with those consequences. To the extent that there need to be upgrades to the facilities and so forth, that's still in the purview of state and retail regulators. And so the rule explicitly points out that anything with respect to upgrades or technical requirements or costs, those are all in the purview of... I understand that, but what struck me with a sentence you said earlier, that the rule doesn't impose any obligation on a local distribution facility. And I assume it does impose the obligation that, imagine it's a state-run utility, that it not block, in whatever sense, it might physically block the transmission to the interstate transmission facility from the local to the interstate. I mean, I guess here, again, we have to go through what it means to impose an obligation. The commission asserting its authority over the wholesale markets necessarily means that states and others don't have authority over those markets. So I don't think it opposes any obligation on states for the commission to say that this is our authority and you can't regulate or prohibit wholesale market activity. From a statutory point of view, sorry, I'm going to use the U.S. Code, A24E1, when it says, the commission shall not have jurisdiction, except as specifically provided in this subchapter, over facilities used for the generation of electric energy or over facilities used in local distribution. Your position that they are not, that FERC is not doing anything with respect to facilities used in local distribution, or is your position that this falls within the accept clause, which then takes you to Section 206, A24E? I would say the commission is not doing anything with respect, or imposing any obligations, on facilities used in local distribution. So you're not relying on the accept clause, is that what you're saying? Well, I mean, part of this is, if we're talking about a facility in local distribution that is also being used to, for wholesale sales, I think that's where the accept, that specifically provided clause, would confirm that the commission has jurisdiction, over the wholesale sales that occur over those facilities, because the preceding language in that provision, states that the commission has, and this part is unqualified, the commission has authority over all facilities used in, for wholesale sales and interstate commerce. But in response to the point that, because the commission is reaching entities, that are connected at the distribution level, and the petitioner's arguments, that somehow constitutes regulation, of local distribution facilities. I think our answer is no, it's not imposing any requirements on facilities at all. The exercise of authority by the commission, is only over wholesale sales and interstate commerce. Now, I think this gets back to the, two pronged analysis, that's articulated in the Electric Power Supply, which is number one, is the commission acting, pursuant to a valid grant of authority from Congress? And number two, is it regulating in an area reserved to the state? As to the first point, the commission's exercise of authority, it's affirmative exercise of authority, is 824 EA, which gives it the authority, actually gives it the obligation, to set the just and reasonable rule of practice, affecting a rate, once it determines that the existing rule of practice, is unjust and unreasonable. That brings us to the secondary question, well maybe not secondary, the second question, of whether it's improperly, regulating in a matter reserved to the state, and that's where we get to 824 B1. I don't understand how you can say, that this doesn't impose any obligation, on the distribution system. If a homeowner installs, solar panels on her home, and as a part of that also, installs batteries, so that she can store, the power generated, by her solar panels, and, she might at some point, decide to use that backup power, instead of buying power, from the local grid, to power her home, or she might decide, that it might be advantageous at some point, to sell that power, that she's got stored in her batteries, on the wholesale market. In order to allow her to do that, isn't the local utility going to have to, make some modifications to, meters and other aspects, of the distribution system to facilitate that, and how is the homeowner, going to get her power from her batteries, in her basement or backyard, or wherever they are, to the wholesale market, without facilitation, by the local utility. So whatever processes, she would have to use before the rule, to get permission to connect, to the local distribution, those rules would still continue to govern, her connection to the distribution facility, and so to the extent that, and so the rule does not, does not burden any of that, it does not take away, state or retail regulators, or the utilities powers, over deciding the terms of that, deciding the terms of that interconnection, but what the states cannot do, is use that authority, to then prohibit wholesale sales, so I guess the point here is that, the fact that there may be effects, on the distribution system, as a result of the rule, is not the same thing as the commission, imposing obligations on states, or on distribution owning utilities, they still have whatever powers, and whatever rights they had before the rule, on the terms of access, to the distribution system, the rule doesn't touch any of that, but the fact that there may be effects, on the distribution side, I mean that's as long as the commission is acting, within a grant of authority from Congress, and as long as it's not imposing obligations, or requiring anything, of facilities used in local distribution, in a way that would constitute regulation, then the effects are legally irrelevant. So you're saying that with this order, FERC is not mandating that the states, facilitate that homeowner's ability, to sell her stored power, to the wholesale market? Absolutely not Judge Wilkins, to be clear, let's assume you're the homeowner, and you see order 841, and you're pretty excited about the prospect, of selling to the wholesale markets, to the extent the homeowner, then marches over to her distribution utility, or to her state regulator, and demands access, the rule doesn't give her that access, she still has to go through, whatever hoops and hurdles, exist at the distribution level, to get access to the distribution system, only after she satisfied those requirements, does she qualify, can she qualify, as an eligible storage resource, under the rule on review here, so that's what we're looking at. Another question I have, is relates to, what we were discussing earlier, about what does this, broadly prohibit language mean, so it appears from the briefing, that some states like California, have rules and policies in place, that require storage capacity, to be reserved for use, in relieving local grid congestion, or other grid reliability purposes, is that, in that they must be given priority for that, over wholesale market sales, is that prohibited by this order? I think the answer is no, it's not prohibited for two reasons, Judge Wilkins. First, the rule is trying to point out, that the broad prohibition language, means that what a state cannot do, is take away the voluntary choice, of a resource to participate in the market, so one of the examples in the rule, is that a state or retail regulator, could require a resource to make a choice, between the wholesale or the retail side, that doing so would not take away, the resource's voluntary choice, and that was the point of the rule, that is that, the just and reasonable rule of practice, should be that any resource, that wants to participate, should be able to do so, I think the regulation, along the lines that you're talking about, if we're talking about granting priority, for local congestion, grid congestion relief, over participation in the wholesale markets, that sounds like it's directly tethered, to a state's authority, over preserving reliability, and safety of the distribution system, so I think based on that, and based on what I mentioned, that it's not taking away, the voluntary choice of a resource, to participate or wholesale, so I think that would be fine. How do you propose, that if we were concerned, about not giving advisory rulings, and not preventing challenges, future challenges, that could be considered, to be either arbitrary and capricious, or ultra vires, how would you propose, that we deal with that concern? Well I mean I think that, the court can on the merits, can resolve the appeal, by simply addressing whether, the rule is a valid exercise, of the commission statutory authority, and that it does not regulate, a matter reserved to the state, but at the same time, you can point out that, to the extent a state decides, to regulate in the future, any disputes about the viability, of that regulation, whoever brings that challenge, can be resolved in a future case, where a court can actually consider, some existing state regulation, versus the Federal Power Act, as all preemption cases tend to go, there tends to be an actual dispute, between some existing state regulation, or law and the federal statute, so the court ruling, on the commission statutory authority, wouldn't hinder anyone, from raising a preemption challenge, in the future to some regulation, that a state decides to enact, and I guess that gets me to a question, that I have about standing, which is that, there has been no particular, state policy rule statute, that's been identified, as being in conflict, with the order, at issue here, orders at issue here, is there any precedent that requires, that there be a life conflict, in order for us to find injury, or is the assertive threat, to state sovereignty sufficient, to find injury? Well I think that, a potential threat to state sovereignty, could satisfy injury, I think here is a good point, for me to point out that, in the state petitioner's reply brief, their allegation of injury in fact, is not the same as the allegation of injury, in fact in the opening brief, and that's obviously we responded to, what was in the opening brief, which is an allegation that, the rule adversely affects, or infringes a state's ability, to regulate to protect reliability, and safety of distribution systems, but in the reply brief, and this is at page three of the reply brief, that change to, their allegation of injury in fact, is now that the rule, takes away a state's ability, to prohibit wholesale market transactions, so I mean I would say that, the court should consider the injury, alleged in the opening brief, I think to the extent that states, are changing that allegation of injury, in their reply brief, I would say that's waste, and furthermore I mean, what they alleged in their reply brief, at least on injury, seems to be nothing more than, a repetition of the ultimate, claim on the merits, that is the notion that, states get to decide, whether a resource can participate at wholesale, and by the commission saying, states can't prohibit wholesale transactions, that causes the state some injury, I understand, and I did see that pivot, between the opening brief, and the reply brief, I guess, even if we hold them though, to the, standing injury theory, that was in the opening brief, if we are to for standing purposes, to assume, that they are correct on the merits, or that they will prevail on the merits, then, why isn't this a sufficient allegation, of injury? Well, I think that this is where some of the cases, that we cited on injury come in, which those cases that have involved scenarios, where the court, found that standing was lacking, because the rule did not actually, impose any obligations, or the allegation of injury did not, show any imposition of an obligation, on the petitioning parties, and if I mean, what they've alleged here, is an infringement of the ability to regulate, and the rule expressly preserves, in a number of places, that precise ability, I'm not sure, I'm not sure, that's enough, for standing purposes, obviously, I mean, we're talking about, state petitioners, I understand there's, somewhat of a different standard, when it comes to a state petitioner, but I mean, they still have to meet the, the elements of article three standing, and I think the commission, that they didn't include any declarations, at least I don't recall, seeing any declarations, relating to standing, attached to their opening briefs, and they won't be referred to, in their opening briefs, that's correct, all right, well on rebuttal, perhaps we can explore that, thank you, if there are no further questions, from the panel, I can stop at this point, all right, thank you, thank you, thank you, why don't we, give petitioners, each two minutes, each in rebuttal, this is Murphy, yes, thank you, your honor, I appreciate that, I wanted to address, a few things, raised by clerk counsel, one is that, he was clarifying, that there are generation resources, on the distribution system, that participate, in the wholesale market, those are done, through wholesale market, participant agreements, because FERC, does not have jurisdiction, over the distribution facilities used, we are arguing that, that section 201, be one, with our authority, over distribution facilities, means that FERC, cannot tell the state, that they cannot prohibit, local storage resources, from participating in the wholesale market, your example, I think it was judge Wilkins, of the homeowner, who is connecting, to the local distribution, system with her storage, and her solar panels, she, there in some cases, are retail markets, that she could participate in, and FERC's rule is saying that, it is the, local storage resources, decision whether to participate, in the, in either the wholesale market, or the retail market, they did say that they could, prevent them from participating, in both markets, but if a state wants to, require them to participate, only in the retail market, they're not able to do that, and their participation, requires, additional accounting and metering, if they are going to participate, in the wholesale market, and that is a burden on the state, that they, that's an impact, that the FERC is, pushing on them through this, this rule by not allowing them to, not allowing them to, further prohibit. Thank you, your honors. Before you stop, I'd like for you to address standing, what is the injury here? The injury here is that, it affects, the state's ability to regulate, and, manage the distribution system, and FERC is saying, that they will be preempted, states will be preempted, even if we had a rule, but some courts have found that, when a state, and when the agency, takes an action that, says it will be preempted, that that gives the, petitioner, an injury in fact, to challenge that, future preemption. But that's not the theory of standing, that was in your opening brief, was it? Our theory in our opening brief, was that, it would have, it would affect our ability to, I'm sorry, I'm looking for the, it would have effects on our ability, to operate, I apologize. Yes, as we argued the state's ability to, facilitate regulatory duties will be, adversely affected by the challenge orders, our regulatory duties, are to manage, and oversee, the distribution facilities, and the resources on those facilities, this, rule is prohibiting us from, using one of the tools, that we could use to manage, to manage, those facilities. So the injury is that, it's going to impede your, ability to ensure the safe, reliable and affordable delivery, of electric service to, consumers, that's what you say I think at pages, 12 to 13 of your brief, opening brief. Yes. Okay, and I'm correct that there's no declaration, in the record, about how that, will be. Sorry will be. No, there's no declaration or evidence, in the record about how that, how that injury will take place. Correct. Okay. And so, so explain, just succinctly, how will that injury take place, if we don't vacate this order? That injury will take place because, the, state will lose, their jurisdiction over, their jurisdiction over the distribution facilities, and, local storage resources will be able to, join the wholesale market, and therefore impose, that imposes additional burdens and requirements, on the state, to facilitate that participation. Okay I guess what I'm struggling with, is that the burdens and requirements, part of this was not part of your theory of standing, as I interpreted your brief. Am I wrong about that? I'm sorry could you repeat that one more time? Your injury seems to be now, what you just said, is that these burdens and requirements, that are being imposed on the states, is your injury. But that's not the way that I read your opening brief. Did I, am I incorrect in my, understanding of your opening brief, or of your argument? No. Well those burdens, are a burden on the state's ability, to fulfill their regulatory duties. Okay. All right I'll leave it there. Thank you. Thank you your honors. Can I ask one question? I'm sorry. Yes. Council said, that on the question, of whether, ESR's participation, in wholesale markets, will have a direct effect, on wholesale rates. That FERC made that finding, and that that was not, challenged. And so to be more specifically, that that's the basis of the entire rule, not just the part about, states. And that, you're not challenging, the rule in that respect. Is that accurate? In part your honor yes. So, the rule applies to much more than just the, these resources that we're discussing. The ones on the local distribution system, and the ones behind the meter. So, FERC, determined that, it needed to allow, all storage resources to participate. And so therefore, removing the barriers, within the wholesale market, to their participation. And so, the rule is valid, in that, in the parts that it directs the wholesale market operators, to remove, barriers within the wholesale market, so that the rates can be just and reasonable. But we're arguing that the, that by, by including, the resources in the distribution, that are connected through the distribution system, is, beyond what, they can do in terms of, their operation of the market. We're saying, that the, their powers are, limited to, their, what they can do within, the rules of the wholesale distribution, the wholesale, the wholesale federal market. Is your position, that, that permitting, participation, in the wholesale markets, by those resources, you just have, ones on the local distribution, and the ones behind the, does not have a direct effect on wholesale rates, or does have a direct effect on wholesale rates? I'm saying, it has an incidental effect on wholesale rates. Thank you. Thank you. Mr. Lane. Thank you, Judge Rogers. I want to get back to a point that, I think, both Judge Garland and Judge Wilkins raised. And that is, physically, are, the distribution, utilities, going to have to do something to their facilities, to allow, the, distributed, what I'm calling distributed storage, the solar panel on the, on the homeowner's house, to get to the markets. And, the answer is absolutely yes. I think if you look on, JA 537, paragraph 42, the commission, names a number of those, things that are going to have to be done. And, sort of colloquially, if you think about it, in the, I know that this court has, heard a number of large generator, interconnection agreement cases where, the, because more power is being added to the system, you have to make adjustments to the system, to the grid, if you want to call it that, or the distribution facility. So yes, they have to be made. And, those are, in fact, what the commission calls the requirements that, the, the state or local, authority will have to decide is it valid or not valid. So, let's just take an example, of the homeowner with the solar panel. Let's say that it's, it's going to cost, 50 times as much to add facilities, on the, add new equipment to the distribution facilities, accommodate that person, that solar panel. Is that something that, we're going to be required to do, or should the states be allowed to broadly prohibit that in that case? I don't know. Judge Wilkins, you brought up the, the California situation, you know, council said, and this is a problem that we have with, and I think council correctly, imperative, the commission's view, that's the reasonably related test. And we're saying, well, who knows what's reasonably related is, if you're having wildfires and you want to, conserve all of that, energy storage for the local distribution, who has the right to do that? Or, does FERC, because it doesn't allow a broad prohibition, just take that option away entirely. So, these are, these are the kind of questions and I, I want to, just bring up another point, Judge Garland, you keep saying this directly affects the wholesale market. Well, if, if the, if the energy storage is taken out of the distribution market and goes to the wholesale market, it directly affects the distribution market. Now, who makes that decision? If, if that, if those, if those energy storage resources are on the distribution system, I would suggest that the state is the one that should be entitled to make that decision. And if that requires a broad prohibition, they should be allowed to do that. That's not preempted. I just, quote from a case called PPL energy in the, in the third circuit, 7, 7, 6, 6, F 3rd, 2 41. The law of supply and demand is not the law of preemption. So, just because there's an effect on the wholesale market doesn't mean that the states are preempted. You have to look beyond that and you have to look at the clear line in what I'm calling 2 0 1 B 1, that the local distribution facilities are subject to the zone of exclusive state jurisdiction. Unless there are any questions. Thank you for the additional time judge Rogers. All right. Thank you. Counsel. The court will take the case under advisement.
judges: Rogers, Garland, Wilkins